UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

COMMUNITY BANK, INC. and )
COMMUNITY BANCSHARES, INC., )
                            )
    Plaintiffs,             )
                            )
vs.                         )   Civil Action No. CV-98-S-0796-NW
                            )
COMMUNITY SPIRIT BANK,      )
                            )
    Defendant.              )

**ENTERED**

**JUN 1 9 1998**

## MEMORANDUM OPINION

This action is before the court on defendant's motion to dismiss or, in the alternative, to stay.

### I. SUMMARY OF FACTS

Plaintiff Community Bancshares, Inc. is a bank holding corporation organized under the laws of the State of Delaware, with its principal place of business in Blountsville, Alabama. Community Bancshares is the sole shareholder of the other plaintiff, Community Bank, Inc., an Alabama banking corporation. The plaintiffs shall be collectively referred to in this opinion by the singular designation, "Community Bank."

For more than a decade, Community Bank has conducted its banking operations through 25 full-service branch locations in ten counties across the northern tier of Alabama, operating under the service mark and trade name of "Community Bank." Although the precise location of those branches is not revealed in the record of the present action, an attachment to Community Bank's motion for preliminary injunction, filed in a prior federal court proceeding



discussed hereafter (*i.e.*, Civil Action No. CV-97-HM-1012-NW), reflects that Community Bank conducts its banking operations in the following Alabama counties (and cities within those counties)[1]:

| COUNTY | CITIES |
|---|---|
| Blount County: | Blountsville |
| | Cleveland |
| | Oneonta (2 branches) |
| | Snead |
| DeKalb County: | Rainsville |
| Jefferson County: | Warrior |
| Lauderdale County: | Rogersville |
| Limestone County: | Elkmont |
| Madison County: | Gurley |
| | Meridianville |
| | New Hope |
| Marion County: | Hamilton |
| Marshall County: | Arab (2 branches) |
| Morgan County: | Falkville |
| | Hartselle |
| Perry County: | Uniontown |
| Winston County: | Double Springs |
| | Haleyville (2 branches) |

Community Bank allegedly serves 50,000 customers through such branch operations, and maintains more than $500,000,000 in assets on deposit, making it one of the ten largest state-regulated banks in the State of Alabama.

Defendant, Community Spirit Bank, also is an Alabama banking corporation, but with its principal place of business in Red Bay

---

[1] The careful reader should note that Community Bank identified 11 Alabama counties in which it maintained branch bank operations in the prior federal court proceeding, rather than the 10 counties alleged herein (Complaint ¶ 7), and, that it identified only 21 branch locations in the prior proceeding, as opposed to the 25 alleged herein (*id.*). The court has been provided no explanation for the discrepancy, but does not consider it material to the issues discussed hereafter.

2

(Franklin County), Alabama. Community Spirit conducted its banking business under the name "Bank of Red Bay" in the Franklin County, Alabama communities of Vina and Red Bay until March 5, 1997. On that date, the Alabama Department of Banking approved the bank's application to change its name to "Community Spirit Bank." Based upon that approval, the Bank of Red Bay thereafter began operating its banks under the name of "Community Spirit Bank." In July of 1997, Community Spirit opened a new branch bank under that name in Hackleburg (Marion County), Alabama, within twelve miles of Community Bank's Haleyville (Winston County), Alabama branch, and within thirteen miles of Community Bank's Hamilton (Marion County), Alabama branch.

Community Bank demanded that defendant cease and desist using the name "Community Spirit Bank" by means of a letter dated March 14, 1997. Community Bank asserted the name, "Community Spirit Bank," was too similar to its own, and would thereby cause confusion among consumers. In response to that letter, Community Spirit filed a declaratory judgment action in the Circuit Court of Franklin County on March 24, 1997, seeking a declaration that its use of the name "Community Spirit Bank" does not infringe upon, or cause any damage to, Community Bank.

Community Bank filed an answer to Community Spirit's complaint in the state court on April 23, 1997. In addition, Community Bank asserted five counterclaims: violation of Section 43(a) of the Federal Lanham Act, 15 U.S.C. § 1125(a); common law service mark

3

infringement; federal service mark dilution; injury to business reputation and service mark dilution under Alabama law; and, common law unfair competition/passing off.

The day after answering Community Spirit's complaint and asserting counterclaims in the state court proceeding (*i.e.*, on April 24, 1997), Community Bank apparently thought better of its decision to join issue in the state court, and filed notice of its removal of the action to this court. The removed action, originally designated Civil Action No. 97-HM-1012-NW, was initially assigned to Senior United States District Judge E. B. Haltom, Jr. It was reassigned to the undersigned on January 23, 1998. By order entered March 19, 1998, this court granted Community Spirit's motion to remand the action to the Circuit Court of Franklin County.

Two weeks later, the present action was commenced in this court by Community Bank. The complaint asserts claims identical to Community Bank's counterclaims in the pending state court action, and is based upon the identical facts sketched above. Community Spirit now has moved the court to dismiss or, in the alternative, to stay this proceeding in deference to the prior state court action. Upon consideration of the pleadings and briefs, this court concludes defendant's motion to dismiss is due to be granted.

## II. DISCUSSION

Community Spirit's motion is based upon two theories. First, Community Spirit argues that application of Alabama Code § 6-5-440

4

requires dismissal of this action. Alternatively, Community Spirit contends that application of the principles articulated by the Supreme Court in two decisions — *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) — requires this court either to dismiss or stay the action. Each argument will be addressed in turn.

**A.   Alabama Code § 6-5-440**

Community Spirit initially asserts that Alabama Code § 6-5-440 bars Community Bank's later filed federal court action, which is based upon the same claims asserted as compulsory counterclaims in the prior state court action. That statute provides:

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

Upon first reading, it would appear that Community Spirit's reliance upon § 6-5-440 is misplaced: *i.e.*, the statute speaks of "No <u>plaintiff</u>" being "entitled to prosecute two <u>actions</u>," but Community Bank is not a plaintiff in the state court action; rather, it is a defendant asserting counterclaims. The Alabama Supreme Court holds, however, that a compulsory counterclaim is to be deemed an "action" for purposes of § 6-5-440, and the statute bars a separate action "for the same cause and against the same

5

party." *Penick v. Cado Systems*, 628 So. 2d 598, 600 (Ala. 1993). Moreover, the Alabama Supreme Court has construed the statute's reference to "actions in the courts of this state" as including "the federal courts within Alabama." *Ex parte Myer*, 595 So. 2d 890, 892 (Ala. 1992).

Thus, on the facts of this case, the statute appears to bar Community Bank from pursuing identical claims on parallel tracks in both state and federal court. The unanswered question, however, is whether an Alabama statute can act to limit this court's authority to adjudicate claims over which it has jurisdiction. Neither Community Bank nor Community Spirit adequately addresses that issue. Moreover, Community Spirit does not direct this court to any authority which supports application of the statute to claims based upon <u>federal</u> law. Accordingly, the court declines to dismiss this action on the authority of Alabama Code § 6-5-440.

### B.   *Colorado River & Moses H. Cone*

A United States District Court's authority to dismiss or stay an action, pending resolution of a parallel state court action, is derived from the Supreme Court's decisions in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

> In *Colorado River* the Supreme Court held that under certain circumstances a federal court action may be dismissed in deference to a parallel state court action

6

in the interest "of '[w]ise judicial administration.'"
The Court cautioned, however, that such dismissals would
be warranted only under exceptional circumstances. It
stressed "the virtually unflagging obligation of the
federal courts to exercise the jurisdiction given them."
The Court concluded:

> Given this obligation ... the circumstances
> permitting the dismissal of a federal suit due
> to the presence of a concurrent state
> proceeding for reasons of wise judicial
> administration are considerably more limited
> than the circumstances appropriate for
> abstention.

The Court suggested that federal courts consider a number
of factors in determining the appropriateness of
dismissal: (1) whether one of the courts has assumed
jurisdiction over property; (2) the inconvenience of the
federal forum; (3) the potential for piecemeal
litigation; and (4) the order in which the forums
obtained jurisdiction.

In *Moses H. Cone* the Court reaffirmed its earlier
decision in *Colorado River* and again stressed that an
action in federal court should not be stayed or dismissed
pending a parallel state proceeding absent exceptional
circumstances. In discussing the factors relevant to a
determination of whether such exceptional circumstances
are present, the Court repeated the four factors listed
in *Colorado River*. In addition, the Court mentioned two
additional factors: (5) whether federal or state law will
be applied; and (6) the adequacy of each forum to protect
the parties' rights.

*Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 381 (11th Cir. 1988)(citations omitted). "These factors do not form a mechanical checklist, but are to be carefully balanced on the facts of a given case." *American Manufacturers Mutual Insurance Company, v. Edward D. Stone, Jr. & Assoc.* 743 F.2d 1519, 1525 (11th Cir. 1984). A district court must reach "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the

7

combination of factors counselling against that exercise." *Colorado River*, 424 U.S. 800, 818-19, 96 S.Ct. 1236, 1247 (citing *Landis v. North American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163, 165-166, 81 L.Ed. 153, 158 (1936)).

With those principles in mind, this court now will review the six factors enumerated by the Supreme Court in *Colorado River* and *Moses H. Cone*, and determine whether a stay or dismissal is warranted.

    1.  Jurisdiction over property
    2.  Inconvenience of federal forum

The first two factors are neutral. Both parties concede there is no property at issue over which this court or the Circuit Court for Franklin County may assume jurisdiction. (Defendant's brief at 6 n.1; plaintiff's brief at 8.) Similarly, the parties agree that the United States District Court for the Northern District of Alabama is no more convenient or inconvenient than the Circuit Court of Franklin County. (Defendant's brief at 6 n.1; plaintiff's brief at 8.) Thus, neither factor warrants a stay or dismissal of this action.

    3.  Potential for piecemeal litigation

The principles articulated by the Supreme Court in *Colorado River* and *Moses H. Cone* "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Manufacturing Co.*

8

v. *C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200, 203 (1952)). Yet, the potential for piecemeal litigation of the present dispute demonstrates that judicial resources would not be conserved, and there could be a conflicting (rather than comprehensive) disposition of the litigation.

Judicial resources would be wasted, because Community Bank's claims in this federal action are identical to its counterclaims in the pending state court action. That fact clearly raises a "potential for duplicative or simultaneous litigation of the issues raised ... in [the] state and federal forums." *Lake Lucerne Civic Association, Inc. v. Dolphin Stadium Corp.*, 878 F.2d 1360, 1373-74 (11th Cir. 1989); *see also Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990)("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results"); *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir. 1982) (permitting both actions to proceed "would be a grand waste of efforts by both courts and parties in litigating the same issues ... in two forums"), *overruled on other grounds*, *Gulf Stream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

Moreover, "comprehensive disposition of the litigation" would be impossible if this court and the state court reached conflicting interpretations of state and federal law. *See Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th

9

Cir. 1992)("allowing both cases to proceed would result in duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue").

Finally, to have this court make a separate determination on the same claims pending in state court "will only result in an undesirable race to judgment." *Byer Museum of the Arts v. The North River Insurance Co.*, 622 F. Supp. 1381, 1386 (N.D. Ill. 1985). During parallel proceedings, either party could "attempt to accelerate or stall the proceedings in order to influence which court finishes first. The result would be quite similar to forum shopping, and is just as unseemly." *Microsoftware*, 686 F.2d at 538. Accordingly, the third factor weighs heavily in favor of dismissal or stay.

### 4. Order in which forums obtained jurisdiction

Undeniably, the state action was initiated first. Even so, the determination of which forum first obtained jurisdiction requires "more than a chronological assessment of whether the state or federal action was filed first. Rather, the question is whether proceedings are further along in one jurisdiction than the other." *Lops v. Lops*, 140 F.3d 927, 943 (11th Cir. 1998).

The proceedings in state court always have moved with dispatch. The state action was commenced on March 24, 1997, and Community Bank filed its answer and counterclaims within thirty days. After removal, the action lay dormant in this court for a period of almost eleven months. Following remand, the state judge

10

already has heard argument on Community Bank's motion to dismiss, and informed the parties of his intent to expedite the case.

In contrast, this federal action has made almost no progress, and the parties have evidenced no desire to proceed: no answer has been filed, no counterclaims asserted, and no hearings have been held before the court. The only action taken by the court thus far is entry of an order directing Community Bank to respond to Community Spirit's motion to dismiss within 14 days. (*See* Order Entered May 22, 1998 (Doc. No. 6).) (It is curious that Community Bank did not respond to the pending motion to dismiss for nearly one month, and then only upon order of the court. Such inaction does not suggest that Community Bank seeks a prompt resolution of this action.)

In the *Lops* case cited earlier in this opinion, the Eleventh Circuit affirmed a district court's refusal to stay an action under the International Child Abduction Remedies Act ("ICARA"), despite the pendency of a similar custody action in state court. The district court's decision in *Lops* was based on facts peculiar to that case: *i.e.*, that ICARA required "expedited judicial proceedings"; the state court faced "an 'apparent heavy schedule'"; consequently, the state court could not "expedite the case ...." *Id.* at 943-44.

Just the opposite is true in the present case. Community Spirit represents that the state judge has informed "counsel for both sides [of] his intent to set the case for trial at the

11

earliest possible time." (Defendant's Brief at 6.) In contrast, the present federal action will require a year, or possibly longer, to move to a trial position.

Obviously, therefore, the parties have progressed further in the state action than the newly-filed federal action. Moreover, given defense counsel's uncontroverted representations, the state action can reasonably be expected to progress more rapidly than the action now pending in this court. Accordingly, the fourth factor also weighs in favor of dismissal or stay.

### 5. Application of federal or state law

Plaintiff's claims implicate both federal and state law. The Eleventh Circuit has indicated, however, that this factor will weigh in favor of a stay or dismissal when a court is presented with "complex questions of state law that a state court might be best suited to resolve." *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988).

Three of Community Bank's five claims herein (and its identical counterclaims in the state action) are dependent upon interpretations of Alabama law. Furthermore, one of Community Spirit's likely defenses (and the basis for its state court action) is that the Alabama Department of Banking approved the change of its corporate name, thereby eliminating any liability. This court's review of Alabama decisional law has revealed no similar cases in which a state regulatory agency approved a trade name, and the use of that trade name later was challenged by a competitor.

12

The force and effect of the Alabama Department of Banking's approval presents a complex and novel question of state law that Alabama's court system is best suited to resolve. Consequently, the fifth factor weighs in favor of dismissal or stay.

### 6. Adequacy of the respective forums

The sixth factor (adequacy of state or federal forum) "will only weigh in favor or against dismissal when one of the forums is inadequate to protect a party's rights." *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988). Community Bank claims the state forum is inadequate, because the state court could not prevent infringement "in Tennessee and any other state where Community Bank has established prior rights in its mark." (Plaintiff's brief at 12.)

That argument is specious, because the evidence before this court demonstrates that Community Spirit only is a "state bank": i.e., it is authorized to conduct banking activities solely within the State of Alabama. There is no indication that Community Spirit transacts business, or intends to transact business, in the State of Tennessee (or any other state for that matter). This court therefore declines to accept plaintiff's argument, and instead finds the sixth factor is "neutral on the question" of dismissal or stay. *Noonan South*, 841 F.2d at 383.

### C. Stay or Dismissal

This court has carefully considered and balanced the six factors enumerated by the Supreme Court in *Colorado River* and *Moses*

13

Cone. *Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 382 (11th Cir. 1988). In doing so, this court finds that three of the six factors are neutral, while the remainder weigh in favor of dismissal or stay, with the threat of piecemeal litigation heavily tipping the scales in that direction. Accordingly, this court finds "exceptional circumstances" warranting dismissal or a stay of this action. That conclusion begs a question: should this court dismiss or stay?

This court is persuaded that a stay is inappropriate, because the threat of piecemeal litigation then would be assured, not avoided. *See Byer Museum of the Arts v. The North River Insurance Co.*, 622 F. Supp. 1381, 1386 (N.D. Ill. 1985)(a stay pending state court's determination would "promote" rather than "avoid" piecemeal litigation).

This court is further persuaded that dismissal is appropriate, because Community Bank is attempting an end run around the removal statute. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169 (11th Cir. 1982)(affirming dismissal of duplicitous federal suit filed after original proceeding involving same claims was remanded to state court). It is clear that Community Bank was not pleased with this court's order in Civil Action No. CV-97-S-1012-NW, remanding the action to state court. Community Bank thought that order erroneous, yet had no avenue of appeal. Community Bank thus sought to circumvent that order by means of this new filing in federal court. This court has *sue sponte*

14

reconsidered its order of remand in the prior action, and concludes that decision was correct then, and is correct now, for the following reasons. On its face, Community Spirit's state court complaint does not assert a federal claim, nor does it necessarily depend upon resolution of substantial questions of federal law. Rather, Community Spirit's claims depend primarily on construction of Alabama common law, and the effect of that State's regulatory approval of its change in name. Federal issues arise, if at all, only tangentially. The great weight of authority supports the view that the mere implication of federal trademark law in a state action based substantially upon state law does not confer federal question jurisdiction sufficient to support removal. *The Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114-15 (5th Cir. 1979)[2]("The fact that Opticks' Lanham Act registration may be a defense to a state trade name infringement claim affords no basis for original federal question jurisdiction")(citing *Gully v. First National Bank*, 299 U.S. 109, 57 115 S.Ct. 96, 81 L.Ed. 70 (1936)); *Duncan v. Stuetzle*, 76 F.3d 1480, 1488 n.11 (9th Cir. 1996)("A complaint's mere mention of the existence of a protected trademark, without more, does not provide a basis for federal jurisdiction"); *La Chemise LaCoste v. The Alligator Co.*, Inc., 506 F.2d 339, 345 (3rd Cir. 1974)(rejecting the argument that defendant's threat to sue under the Lanham Act rendered plaintiff's state declaratory

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

15

judgment action removable); *Emerson Power Transmission Corp. v. Roller Bearing Company of North America, Inc.*, 922 F. Supp. 1306, 1312 (N.D. Ind. 1996)("the mere fact that the plaintiff's complaint implicates an issue related to a federally protected trademark does not dictate that removal is proper"); *Commercial Savings Bank v. Commercial Federal Bank*, 939 F. Supp. 674, 683-84 (N.D. Iowa 1996)(Lanham Act issues which arise in defense "cannot establish removal jurisdiction"); *Wortham v. K. Khan, Inc.*, 932 F. Supp. 1176, 1177 (E.D. Mo. 1996)(even if a federal-law defense poses the only contested issue, it is not a proper basis for removal jurisdiction, "even if a plaintiff anticipated the defense argument, and even if both parties concede the federal question is the only real issue in the case"); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F. Supp. 985, 993 (D.N.J. 1996)("where a plaintiff does not clearly state relief under the Lanham Act, removal is not proper"); *Hamilton v. Hertz Corp.*, 607 F. Supp. 1371 (S.D.N.Y. 1985)(simply because federal trademark law is implicated in a case does not signify that removal jurisdiction is appropriate).

Once Community Bank asserted its counterclaims in state court and this court found them to be nonremovable, an independent federal suit asserting those same claims was not permissible. *See Haydu*, 675 F.2d at 1174 ("'End runs' around the removal statute have long been in disfavor"); *Morisada Corp. v. Beidas*, 939 F. Supp. 732 (D. Haw. 1995)(defendant not permitted to re-file claim, previously

16

asserted as counterclaim, after district court remanded prior action to state court); *Hoodco, Inc. v. United Capital Insurance Co.*, 875 F. Supp. 541, 543 (S.D. Ill. 1994)(defendant that could not remove because sued in its home forum of Missouri not allowed to file federal action on same claims in Illinois).

Community Bank's disregard for federal removal policy and its obvious attempts at forum shopping demonstrate that dismissal of this action is appropriate. Indeed, Community Bank would suffer no prejudice by dismissal, because every claim in this action is pending before the state court, which can fully and fairly resolve the dispute. This court thus finds that defendant's motion to dismiss is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this  19th  day of June, 1998.

*[signature]*
United States District Judge